The first case on the call of the docket is agenda number one, case number 127273, People of the State of Illinois v. Robert M. Clark. And the appellant is Brett C. Zee. Is that correct? Sorry, Brett. Please begin. Good morning, Your Honors. Counsel, may it please the Court. My name is Brett Zee. I'm from the State Appellate Defender's Office, and I represent Mr. Robert Clark. The relief Mr. Clark seeks from this Court is extremely limited. He's not asking this Court for a new sentencing hearing. He's not asking this Court to reduce his sentence. He's not asking this Court to make a broad rule that all emergent adults with mental disabilities like him are entitled to a new sentencing hearing. Instead, Clark merely asks this Court to allow him the chance to prove that at the time he committed this crime, his functional age was more closer to a juvenile than it was to an adult. And he's merely asking this Court to give him leave to file his successive post-conviction petition. Counsel, are you suggesting that we should deviate from the requirement that cause and prejudice be established before leave is granted? Not at all, Your Honor. Mr. Clark has proven a case of cause because the decisions that his petition rests upon, his proportionate penalties claim rests upon this Court's decision in People v. Thompson, and that didn't come into existence until 2015. So his entire sentencing claim, the unique combination of his emerging adult status and his mental disabilities at the time he committed this offense, that puts him in a unique situation in that the law at the time he was sentenced, society has evolved, the neuroscience has evolved. The current neuroscience shows that a person's brain doesn't fully develop until age 25. And Mr. Clark's unique situation, coupled with his mental disabilities, his alcohol and drug addictions, the law simply didn't exist in 1994 when he was sentenced for this offense, and it didn't exist in 2010 when he filed his initial post-conviction petition. So how does People v. Thompson help your client? Well, in People v. Thompson, that's the first time that this Court suggested that an adult defendant might be able to also successfully challenge his life sentence as violated the proportionate penalties clause as applied to him. Does People v. Cody govern the decision in this case? Well, Your Honor, no. The dissenting opinion below is, I think, the better interpretation of this Court's opinion. Obviously, this Court made the decision, so it knows what it held. But in People v. Cody, well, first of all, Cody should apply it just to Cody himself. And Cody, as the dissenting judge held below, Cody shouldn't be applied as a broad rule to prevent all emerging adults with mental disabilities from attempting to prove that their de facto or life sentence as applied to them individually violated the proportionate penalties clause. Counsel, if Cody does not apply to this case, then where does that leave us in terms of determining that in this instance your client should be able to proceed? And what I'm referring to specifically, it seems like a slippery slope. So how do we determine what person, how bad their situation mentally has to be? How do we manage that if we don't apply Cody generally? I see the potential floodgate problem here, Your Honor. But what makes Clark's case unique is that this isn't just a bare allegation that his mental disability and his emerging adult status might have reduced his functional age at the time of the offense to that of a juvenile. There's ample evidence in the sentencing hearing that shows a whole host of problems that he had. His very limited intellectual ability, he had a 79 IQ. He was diagnosed with antisocial personality disorder, borderline mental retardation. He had fetal alcohol syndrome, a host of mental issues and family upbringing issues that if a court were to look at those things today in light of the new neuroscience and in light of the evolving standards, the constitutional lens that we look at these types of juvenile sentencing issues, that it's possible that a court could determine that Mr. Clark's sentence individually applied to him, violated the proportionate penalties clause. Again, we're not arguing for a broad rule that any pro se defendant who files a post-conviction petition can just say, hey, I'm an emerging adult. Hey, I had some mental problems. Therefore, I deserve a new sentencing hearing or I deserve a reduced sentence. So speaking of this juvenile lens that you're talking about, how do Miller considerations apply at all to this discretionary sentence in light of Jones v. Mississippi? Well, Jones shouldn't be dispositive of this case, Your Honor. There's a couple differences between Mr. Clark's case and Jones. In Jones, that was a fully negotiated plea to a specific sentence. Here, Mr. Clark did plead guilty but mentally ill, but he didn't negotiate a specific term of years for a sentence. So that's a difference between Mr. Clark's case and Mr. Jones. Wasn't the broader holding of Jones, though, that it didn't apply to discretionary sentences? It only applied to mandatory sentences? Well, Your Honor, this court in Holman clearly held that Miller protections apply. Holman predated Jones. Yes, but Holman relies on the proportional penalties clause. And the proportional penalties clause does provide a broader constitutional protection than the Eighth Amendment does. Did the petitioner allege any new factual information in his petition at all? Well, as PSI does, he doesn't attach any new evidence. There's no new evidence that he's been evaluated by a new psychiatrist or that he's had brain imaging that shows we're a neuroscientist. Is that no? Nothing new, yes, Your Honor. But, again, there's not just bare allegations in his petition. There is ample evidence in the PSI that shows the host of mental disabilities and other factors in his life that, again, a court would have to look at this evidence in a different light. If he was evaluated today, the scientists, the psychiatrists, the psychologists would all look at Mr. Clark's individual situation differently just because the science and, again, the way that we sentence a defendant such as Mr. Clark. Again, age 24, he's an emergent adult, host of mental disabilities. There's certainly the possibility that if this case is advanced to the second stage with the appointment of counsel, that that new evidence could be obtained. And then that begs the question of who's in the better position to determine whether Mr. Clark did have a functional age of a juvenile at the time he committed this offense. He's been in prison for almost 28 years. So I think that these experts, a medical expert would be in a better position to make that determination rather than a court based on this record. Counsel, would you agree that at his sentencing hearing, and I realize you're just asking for leave to appeal, leave to file your petition at this point, but would you agree that at the sentencing hearing the trial court did consider his age and his mental condition? That's certainly true. There is, this was a sentencing hearing that involved ample expert opinion, psychiatric evaluations, and the judge did do a thorough job evaluating what would be the appropriate sentence. But again, this was 1994. This is before these changes in the law, changes in the lens that we use to sentence someone like Mr. Clark. And at that point, those were just a person's age and mental disability. Those were just sentencing factors, possible mitigating factors. Again, now it's more than just a sentencing factor. The case law now puts limitations based on these Miller factors that a court has to consider before sentencing someone to a de facto or an actual life term. So it would be different. So Mr. Clark has made a prima facie case of cause. He's also shown a prima facie case of prejudice. We've touched on Cody. I guess in conclusion, there are a couple cases that support Mr. Clark's claim. And those both come out of the first district in 2020. Peeble v. Daniels is probably the case that's most on point. That's a 2020 case. And there the court held that a defendant did meet the cause and prejudice test. He had been sentenced to a life term. He did plead guilty. He was 18 at the time of the offense and had mental health issues. And notably, the court in Daniels held that Cody was not dispositive. Again, as I'm arguing, the court held that this individual defendant, Daniels, could possibly prove with the appointment of counsel and further proceedings that his specific mental condition and age made his functional age that of more like a juvenile than that of an adult. And the next case is Peeble v. Savage. Again, that's a 2020 case from the first district. There it was the defendant's initial post-conviction petition. The court advanced it to second stage proceedings. There again, the petitioner alleged a proportionate penalties clause violation. He was 22 at the time with mental health issues and drug addiction. After a bench trial, he was convicted of murder and given an 85-year sentence. And there, the appellate court agreed that his mental issues and his age might reduce his functional age, looking at, based on the evolution of the case law, the evolution of the neuroscience. Is the issue really here the reduction of the functional age or is the issue whether the disabilities are transient? Well, those are kind of two parts of the same question, Your Honor. What evidence is there in the record that your client's issues are transient? Well, it goes back to the way that a psychiatrist, a therapist, a psychologist, would look at Mr. Clark's individual situation now is much different than it was in 1994, just based on the evolution of the neuroscience. The knowledge that a brain doesn't stop developing fully until age 25. The change in the jurisprudence regarding the proportionate penalties clause. It might be true that after further evaluation now and based on how he's done in prison for the 28 years and the appointment of counsel, it's certainly possible that the experts would say, no, his conditions are not transient. They're permanent. He's not capable of rehabilitation. But our whole argument is premised on the fact that second stage proceedings is the more reasonable spot for that determination to be made. Are you saying the court should be able to look at what's transpired since the conviction and up until now or is the court supposed to look back at what the picture was back when the defendant was originally convicted? I'm not suggesting that we can introduce new evidence into the record, Your Honor, but I am suggesting that, number one, the court, and certainly it's very, this is a complex question. It's not an easy determination. And, again, that supports our argument that it should be at the next stage after some new experts have looked at Mr. Clark's situation based on what it was then at the time. And it certainly seems reasonable that part of the total analysis as to whether he's capable of rehabilitation and whether his conditions are transient or not, I mean, they probably have to look at how he's evolved in the past 28 years. That's certainly a piece of the puzzle. If there are no further questions, Mr. Clark, I respectfully request this court to advance this case to second stage proceedings where he can be appointed an attorney to help him advance his sentencing claim. Thank you. Thank you, Mr. Clark.  Ms. Gopi-Kashyap? Ms. Gopi-Kashyap? May it please the Court, Counsel? I am Assistant Attorney General Gopi-Kashyap on behalf of the people of the State of Illinois. I'd like to start where Justice Burke started, the question that Justice Burke asked. Petitioner's claim appears to rest on Holman, which was an Eighth Amendment case, and that case was decided before Jones v. Mississippi, where the United States Supreme Court implicitly overruled Holman's holding that Miller's rule against mandatory life-without-parole sentences for juvenile offenders extends to discretionary sentences imposed on juvenile offenders. And so the law as it stands under the Eighth Amendment right now is that mandatory life-without-parole sentences for juvenile offenders violate the Eighth Amendment, but discretionary sentences for juvenile offenders do not violate the Eighth Amendment. Petitioner's cause argument rests on this evolution that occurred post-Miller, really after Montgomery. And so there was this world in between where courts across Illinois were trying to figure out how everything worked, and so they were extending Miller, and they were under Montgomery, they were extending it to young adults, and so there was this whole evolution. But the reason that that evolution is irrelevant here is because the legislature has enacted the cause and prejudice standard, and that is the standard that applies under the Act, and that is the standard that applies here. And in Pitzenberger, this Court explained that when you're relying on a change in law, it has to be a new constitutional right. The legal basis for the claim has to be so novel that it wasn't reasonably available, and no court has applied it based on some circumstances where the law might be evolving or there's a trend in a certain direction or maybe we're thinking about how to treat people differently. There has to be a new rule. And in this instance, there is no new rule under the penalties provision. This Court, every time it has had a case where litigants have tried or courts have tried to extend Miller to other circumstances, has overturned that case. Let's start with Cody. That's the intellectually disabled offender. The appellate court had extended Miller to that category of offenders, and this court overturned that decision. Harris, Thompson, House, those three decisions occurred where young adult offenders were attempting to extend Miller to their circumstances. And in each case, the court said that was not something that could be done. In Harris and House and in Thompson, there was a record issue. But the point is that the court has not yet endorsed this notion that young adult offenders should be entitled to the same protections as juvenile offenders. And, in fact, juvenile offenders do not have the same protections that Petitioner is saying that he should have. As I discussed, Jones v. Mississippi says that they don't have that protection, and this court has never said under the penalties provision that they should have that protection. So we start here with the lack of any new constitutional rule under the penalties provision, which takes us right back into what happened here at the sentencing hearing and on direct appeal. The Petitioner here raised a claim under the penalties provision on the record that was before the court. He has not cited any new evidence that might change that result. He has not cited any new law that would change that. The standards have been applied in this state for over 50 years. The procedure that's used has been applied for over 50 years. That procedure includes consideration of youth, mentality, family upbringing, personal circumstances. Every factor relevant to the person's individual circumstances is and should be considered and must be considered at a sentencing hearing in Illinois, especially when there's a discretionary sentence. The goal for the trial judge is to decide the sentence based on the facts and circumstances of the case. They look at- Thompson, what about that opposing counsel said People v. Thompson was somewhat of a game changer? My word is not his, but how do you respond to that? Thompson is a procedural case, Your Honor. It is a case where I believe it was a 214-01 petition where the young adult offender tried to extend Miller to his circumstances, and the court said that was inappropriate and said that you might be able to raise it on the Post-Conviction Hearing Act. But at that time, my recollection is I believe that at that time, I mean, the court said there was no record on which the court could find that Miller's rule should apply to young adult offenders. And so it said you can go and litigate this under the Post-Conviction Hearing Act. But it did not comment expressly on whether that would be successful and whether the petitioner there, Thompson, could satisfy the cause and prejudice standard. And we submit that the court's rule in Pittsburgh, which stems from Reed v. Ross, which is the United States Supreme Court decision, a litigant can't establish cause based on a change in law unless there's actually been a change in the constitutional right itself. There has to be a new constitutional right. That is the way this court applies that rule in the res judicata context, which also applies here. And that is the way it has applied it in the cause context. And so we're not saying that a litigant in a petitioner situation would never be able to get relief. You would have to go through the normal course of events. A person on direct appeal would have to develop the record, would have to bring all the evidence, and then the court can consider the claim. And if at that point the court decides that under the penalties provision there should be this new rule, then that rule would be created. And then any petitioner under or defendant in prison would be able to file a successive post-conviction petition by saying, well, this is the new rule, I now have cause, and then we'd figure out whether that rule applies retroactively and to that person's circumstances. That's how it applied with Miller itself. In Davis, Miller v. Alabama had been issued, I believe, while Davis was on appeal. He had actually tried to rely on Graham v. Florida. But Miller was decided while the case was on appeal, and the court said, well, Miller provides cause because it's a new rule that prohibits mandatory sentences. It was a substantive rule. Davis was sentenced to mandatory life. And so he satisfied the cause and prejudice test. That is all we're saying. We're not saying the petitioner could never get relief. We're saying he can't use the successive post-conviction procedure to create a claim that just doesn't exist. So in his briefing he had relied on Miller and Atkins, and I believe Justice Holder Wright touched on Cody and how it works here. Cody's logic applies with equal force here. This is a petitioner who developed an entire record of his mental condition. This is not a situation, I believe Minifield is one of the cases the petitioner had cited in his brief, this is not a situation where the psychological evidence was not before the court or there wasn't a finding of incorrigibility. This is a case where we have a very large record of petitioner's history, his family's circumstances, his mental health. Everything to know about this petitioner is in the record. And on that record, there is simply no basis to conclude that his sentence is not constitutional under the penalties provision. His crime was obviously very serious. He slit the throat of an 89-year-old woman after invading her apartment to rob her. He had previous residential burglary convictions. And then he does not have rehabilitative potential. Petitioner suggests that if he presented evidence that, in general, brains continue to develop until age 25, then he might be able to show that he has rehabilitative potential. But the problem here is that we already know that his culpability is reduced due to his mental condition. This is what Cody discussed. His mental condition is that of a juvenile. He has impulsivity like a juvenile. He can't appreciate the consequences of his decisions like a juvenile. He shares many of those characteristics, if not all of them. But he has additional characteristics. The problem is they're not transient. And even now, I mean, he was sentenced at age 25. And so even at that point, he still exhibited these characteristics, and those characteristics had existed way back when he was 11. We have a record that shows that none of this has changed through ordinary growth. And so as the court said in Cody, for this offender, we have a record that he will not change. His conditions are not dependent on his transient youth. They result from his mental disorders. And the court emphasized that while his culpability is lessened, absolutely, because he thinks like a juvenile, it also results in him being a future danger to society. And for those reasons, even today, there is no basis to conclude that his sentence would be unconstitutional under the penalties provision. One moment just to make sure I didn't miss anything. Thank you. Unless the court has any further questions, we ask the court to affirm the judgments of the courts below. Thank you. Thank you, Ms. Koshyp. Mr. Zeid. Thank you, Your Honors. I'll be brief. First, regarding Jones, another thing that differentiates Clark's case from Jones' is that the State didn't specifically – the State did cite Jones in its brief, but they didn't specifically raise the argument that Clark waived his sentencing claim. In addition, waiver is a remedy. It should be used sparingly. It should be used sparingly to protect a defendant's rights. And I would disagree that the evolution of the proportionate penalties clause jurisprudence related to Miller is certainly not irrelevant. This court has made numerous decisions and contributed to the evolution of the case law and how Illinois' proportionate penalties clause is used by juvenile defendants. I mean, the whole purpose of the proportionate penalties clause is to provide more protection to a defendant, such as Mr. Clark, than the Eighth Amendment does. And, yes, Mr. Clark did commit a murder, but Miller protections are not crime-specific. So the severity of his offense is immaterial. But it's not immaterial, though, to the proportionate penalties clause analysis, is it? It's not immaterial, but whether the Miller protections apply, it doesn't matter what the crime was. What matters is that it was a de facto life sentence. I'm certainly not downplaying the severity of the offense committed here, Your Honor, but the argument is that the Miller protections apply because it's a de facto life sentence, whether it was a murder or a sexual assault, as in Cody. Another thing that differentiates Mr. Clark's case from Cody, Mr. Cody was a 46-year-old repeat sex offender. Mr. Clark was a 24-year-old with severe mental disabilities who committed a murder. Your Honor, this Court should give Mr. Clark a chance. It shouldn't close the door on all emerging adults and persons with mental disabilities who had the misfortune of being sentenced in 1994 before the evolution of this neuroscience and the current lens that we look at how our society seeks to both punish and rehabilitate a person like Mr. Clark. Again, we don't know what's going to happen if this case advances to the second stage. It's certainly possible that, again, these experts will look at Mr. Clark's situation and say that his condition cannot be changed, he cannot be rehabilitated, and then that would be that. But it certainly makes more sense for such a complex determination that combines constitutional law, neuroscience, our changing society in general. It makes more sense to do that after he's been evaluated again through this new lens than to have this Court shut the door on his petition. Thank you, Your Honors. Thank you. Case number 127273, People of the State of Illinois v. Robert Clark, is taken under advisement as agenda number one. Thank you, Mr. Zeid, and thank you, Ms. Gokosha, for your arguments this morning.